# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **PATSY D. SCOTT** | : | |
| Plaintiff | : | CIVIL ACTION NO. 1:17-1659 |
| v. | : | (JUDGE MANNION) |
| **ANDREW M. SAUL**[1] | : | |
| Defendant | : | |

## MEMORANDUM

**I.     INTRODUCTION**

Patsy D. Scott ("Scott") brings this action under 42 U.S.C. §§405(g), 1383(c)(3) to review the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Social Security Disability Insurance Benefits ("DIB") and Social Security Income Benefits ("SSI"). (Doc. 2). An Administrative Law Judge ("ALJ") concluded that Scott is capable of performing past relevant work and, thus, is not entitled to DIB or SSI. (Doc. 7-2, at 25-26). After review of the ALJ's decision was denied, it became the final decision of the Commissioner. (Doc. 7-2, at 1). Scott alleges that the ALJ erred: (1) in finding Scott's mental impairments were non-severe; (2) in

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019. The court has substituted him with the previous defendant in this action under Federal Rule of Civil Procedure 25(d).

finding that Scott was able to return to her past relevant work; and (3) in failing to apply the medical-vocational guidelines. (Doc. 11-1).

The record in this action has been reviewed as instructed by 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying Scott's claim for DIB and SSI under the Social Security Act ("Act"). 42 U.S.C. §§401-433, 1381-1383f.

For the reasons set forth herein, Scott's motion for summary judgment (Doc. 11) will be **DENIED**, the Commissioner's cross-motion for summary judgment (Doc. 12) will be **DENIED**, the Commissioner's decision denying DIB and SSI will be **VACATED**, and this matter will be **REMANDED** to the Commissioner under 42 U.S.C. §405(g).

## II. BACKGROUND

### a. Procedural History

Scott applied for DIB on December 3, 2013, alleging disability beginning on January 1, 2012 (Doc. 7-5, at 2-3) and applied for SSI on December 17, 2013, alleging disability beginning on December 17, 2013 (Doc. 7-5, at 4-13). Scott's DIB and SSI applications were both initially denied on March 6, 2014 (Doc. 7-3, at 13-34), and were again denied on reconsideration on September 25, 2014 (Doc. 7-3, at 37-62).

On December 10, 2014, Scott filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Doc. 7-4, 19-20). Scott was represented by counsel at the hearing held on February 17, 2017, via video conference. (Doc. 7-2, at 32-59). On March 24, 2017, the ALJ issued a decision denying Scott's claims for DIB and SSI. (Doc. 7-2, at 10-26). Scott requested review of the ALJ's decision by the Social Security Administration's Appeals Council ("Appeals Council") on May 22, 2017. (Doc. 7-4, at 83-85). The Appeals Council denied Scott's request for review on September 12, 2017. (Doc. 7-2, at 2-6). Therefore, the ALJ's decision denying Scott DIB and SSI became the final decision of the Commissioner. 20 C.F.R. §§404.955, 404.981; *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On November 15, 2017, Scott filed a complaint seeking judicial review of the ALJ's decision. (Doc. 2). Scott filed her motion for summary judgment (Doc. 11) along with a brief in support (Doc. 11-1) on February 19, 2019. The Commissioner filed her cross-motion for summary judgment (Doc. 12) with a brief in support of her motion and in opposition of Scott's motion (Doc. 13) on March 21, 2019. The motions are now ripe for disposition.

### b. The Administrative Hearing

At the hearing held before an ALJ on February 17, 2017, Scott testified along with vocational expert Brade Berger ("VE Berger"). Scott was represented at the hearing by Attorney Vanessa Guslav. The testimony may be summarized as follows.

### *i. Scott's Testimony*

At the time of the hearing, Scott was 58 years old, stood 5' 3.5" tall, and weighed about 202 pounds. (Doc. 7-2, at 37-38). She completed college and holds a degree in the field of accounting. (Doc. 7-2, at 39). In addition to working as an accounting clerk, Scott has held positions at an Amazon warehouse, her sister's daycare, and AstraZeneca Pharmaceuticals. (Doc. 7-2, at 39-43). Scott quit her most recent job as an accounting clerk for a funeral home because she had trouble keeping up with the job performance expectations that she had for herself and because the job required more than what she expected. (Doc. 7-2, at 39-40). Scott lives with her sister, who does most of the chores around the house, and her son Patrick. (Doc. 7-2, at 50-51).

Scott estimates that she can walk for 10 minutes before she needs to stop and catch her breath. (Doc. 7-2, at 44). She also believes that she can

stand for 15 minutes before she needs to sit down. (Doc. 7-2, at 49). Scott testified that her knees are horrible, and her legs and left foot hurt very bad. (Doc. 7-2, at 45). When asked whether she can kneel, Scott said, "[n]ot that good." (Doc. 7-2, at 49). Scott has no difficulties sitting down. (Doc. 7-2, at 49). She estimates that she can lift or carry a maximum of 5-10 pounds. (Doc. 7-2, at 50). Scott stated that her biggest challenge, physically, is going upstairs. (Doc. 7-2, at 50).

Concerning her diabetes, Scott stated that her biggest challenge is monitoring her low blood sugar. (Doc. 7-2, at 45). Scott believes that when her blood sugar gets really low that she becomes really irritable and that she needs to immediately eat candy or drink a sugary beverage. (Doc. 7-2, at 45). Scott testified that she can work steady at a job where she is sitting down, but she needs breaks periodically to ensure her blood sugar level is proper. (Doc. 7-2, at 55).

Scott believes that her anxiety and depression are mental limitations that prevent her from working. (Doc. 7-2, at 47). She only sleeps 3-4 hours each night because she is always thinking about her health. (Doc. 7-2, at 48).

### *ii. VE Berger's Testimony*

The ALJ asked VE Berger a hypothetical question in which he was asked whether an individual—the same age, vocational background, and education as Scott, who was restricted to a sedentary exertional level and limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling—could perform any of the past work done by Scott. (Doc. 7-2, at 57). Based on the hypothetical person's supposed abilities, VE Berger stated that such a person would be able to perform Scott's past job as an accounting clerk. (Doc. 7-2, at 57).

Then, the ALJ asked VE Berger whether the additional limitation—that this hypothetical person was limited to only simple, routine, and repetitive tasks with little interaction with the public or coworkers—would change his opinion. (Doc. 7-2, at 57). With this additional limitation, VE Berger stated that this hypothetical person would not be able to perform Scott's past work. (Doc. 7-2, at 57). Also, VE Berger states that Scott did not possess any transferable skills to any other sedentary job, even at a lower skill level. (Doc. 7-2, at 57-58).

In response to questioning from Scott's attorney, VE Berger opined that a person who was likely to miss four or more days of work each month because of their conditions would be unable to perform any job. (Doc. 7-2,

at 58). Also, VE Berger testified that generally, employers tolerate a maximum of five percent of time required for breaks throughout the workday. (Doc. 7-2, at 58).

### c. The ALJ's Findings

The ALJ's decision was unfavorable to Scott. The ALJ did find that Scott has severe impairments in the form of degenerative joint disease, diabetes mellitus, and obesity. (Doc. 7-2, at 15). Despite these findings, the ALJ found that Scott has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she "is limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling." (Doc. 7-2, at 18).

The ALJ also found that Scott "is capable of performing [her] past relevant work as an accounting clerk." (Doc. 7-2, at 25). Accordingly, the ALJ found that Scott had not been disabled from her alleged onset date through the date of his decision.

### III. LEGAL STANDARD

#### a. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled[2]. The Commissioner must consider: 1) whether the applicant is engaged in a substantial gainful activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby she qualifies for benefits without further inquiry; 4) whether the claimant can perform her past work; and 5) whether the claimant's impairment together with her age, education, and past work experiences preclude her from doing

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §423(d)(1)(A). The Social Security Act further provides that an individual is disabled

> only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. §423(d)(2)(A).

any other sort of work. 20 C.F.R. §§404.1520(b)-(g), 416.920(b)-(g); *see* *Sullivan v. Zebley*, 493 U.S. 521, 525-26 (1990).

The disability determination process involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies their burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fourth step of the process when the ALJ found that Scott is capable of performing her past relevant work. (Doc. 7-2, at 26).

### b. Standard of Review

This court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. §405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla." It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.

1981). The United States Court of Appeals for the Third Circuit ("Third Circuit") further explained this standard in *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. *See Cotter*, 642 F.2d at 706 (" 'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

This guidance makes clear that it is necessary for the Commissioner to analyze all evidence. If they have not done so and have not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Third Circuit clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "[s]ince it is apparent that the ALJ cannot reject

evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in [their] opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (citing *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. §405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "However, even if the [Commissioner's] factual findings are supported by substantial evidence, [a court] may review whether the [Commissioner], in

making [their] findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See, e.g., Albury v. Commissioner of Social Security*, 116 F. Appx. 328, 330 (3d Cir. 2004) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. DISCUSSION

In her motion for summary judgment, Scott argues that the ALJ erred: (1) in finding Scott's mental impairments were non-severe; (2) in finding that Scott was able to return to her past relevant work; and (3) in failing to apply the medical-vocational guidelines. (Doc. 11-1).

In her first objection, Scott alleges, among other things, that the ALJ erred by failing to address whether Scott's "diagnosis of generalized anxiety

disorder was a medically determinable impairment . . . ." (Doc. 11-1, at 14). This court's review of Scott's medical records reveals that on December 20, 2016, she sought treatment for the first time for depression and anxiety from Nurse Practitioner Ema Ndi[3] ("Ndi"). (Doc. 7-11, at 10-13). In her notes from that meeting with Scott, Ndi states that Scott will benefit from treatment for her anxiety and depression and that she is going to start Scott's treatment by targeting her anxiety. (Doc. 7-11, at 10-13). Ndi prescribed Scott "0.5mg" of Klonopin daily as needed for anxiety. (Doc. 7-11, at 10-13). Additionally, Ndi noted that Scott has generalized anxiety disorder. (Doc. 7-11, at 10-13).

At step two in the disability determination process, the ALJ failed to discuss Scott's generalized anxiety disorder. The ALJ's decision is silent as to whether Scott's generalized anxiety disorder is a medically-determinable impairment. "An ALJ is required to consider impairments a claimant says [s]he has, or about which the ALJ receives evidence." *Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)* (internal citations omitted). Considering the records indicating that Scott has generalized anxiety disorder were part of

---

[3] The medical records reference Ndi as "Ndi, Ema PMHNP-BC." (Doc. 7-11, at 13). This court takes judicial notice that Ndi's title "PMHNP-BC" indicates that she is a Board Certified Psychiatric-Mental Health Nurse Practitioner.

the record, which was readily available to the ALJ, he should have considered this impairment and indicated such in his decision.

Rather than addressing each impairment contained in the record individually, the ALJ stated, generally, that all impairments "alleged and contained in the record, are non-severe or not medically determinable[,]" except those he specifically indicated as severe. (Doc. 7-2, at 16). Under that approach, it is impossible for the court to determine what amount, if any, of consideration that the ALJ afforded Scott's generalized anxiety disorder. The Commissioner argues that "further discussion of [Scott's] anxiety would not have changed the ALJ's decision because the four functional areas used to evaluate anxiety are the same four areas used to evaluated depression." (Doc. 13, at 18). However, this argument fails to consider the cumulative effect of multiple mental illnesses could change the ALJ's impression of the severity of Scott's limitations. The ALJ's conclusion—that Scott had only mild limitations in the four "paragraph B" areas of functionality—only considered Scott's depression. If the ALJ considered Scott's depression and anxiety together, the ALJ might have concluded that Scott has more than a mild limitation in one or more of the four "paragraph B" areas. This court's role is not to guess or speculate as to what the ALJ would have done; rather, it is

to determine whether the ALJ's decision, as it is currently written, is supported by substantial evidence.

Without the ALJ's evaluation of Scott's generalized anxiety disorder, this court cannot conclude that the ALJ's decision is supported by substantial evidence.

## V.     CONCLUSION

Based on the foregoing, Scott's motion for summary judgment (Doc. 11) shall be **DENIED**, the Commissioner's cross-motion for summary judgment (Doc. 12) shall be **DENIED**, the Commissioner's decision denying DIB and SSI shall be **VACATED**, and this matter shall be **REMANDED** to the Commissioner under 42 U.S.C. §405(g). An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 14, 2019**
17-1659-01